# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

|  |  |
|---|---|
| MICHAEL F. SHORT, as TRUSTEE of the MICHAEL F. SHORT LIVING TRUST, and SHORT FR, LTD., a Texas limited partnership, | CV 19-31-BLG-TJC |
| Plaintiffs, | **ORDER** |
| vs. |  |
| PARK ELECTRIC COOPERATIVE INC., and ARTHUN RANCH INC., |  |
| Defendants. |  |

Plaintiffs Michael F. Short, as Trustee of the Michael F. Short Living Trust, and Short FR, LTD., a Texas limited partnership, (collectively, "Short"), filed this action against Defendants Park Electric Cooperative, Inc. ("PEC"), and Arthun Ranch, Inc. ("Arthun"), alleging various causes of action related to the provision of electrical service on Short's property and easements for electrical distribution lines. (*See generally* Doc. 1.)

Short's Complaint asserts claims for declaratory judgment on easement rights (Counts 1 and 2); obstruction of, interference with, and breach of easement (Count 3); injunctive relief (Count 4); unjust enrichment as to PEC (Count 5); unjust enrichment as to Arthun Ranch (Count 6); and violation of the Montana Consumer Protection Act as to PEC (Count 7). (*Id.* at 10-19.)

1

Pending before the Court are Arthun's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and (6) (Doc. 6), and PEC's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Doc. 11). The motions are fully briefed and for the following reasons, the Court orders (1) that Arthun's motion is **GRANTED** in part and **DENIED** in part; and (2) PEC's motion is **GRANTED** in part and **DENIED** in part.

## I. Factual Background

The following pertinent facts are taken from Short's Complaint, which are accepted as true for purposes of Defendants' motions.[1]

Short owns two sections of real estate which are situated immediately north of a section of land owned by the State of Montana ("state section"). (Doc. 1 at ¶¶ 7-8.) Arthun Ranch owns two sections of real estate stacked due south of the state section. (*Id.* at ¶ 9.) Short is building a residence on their property and wish to establish electrical service. (*Id.* at ¶ 10.)

---

[1] Like a motion under Fed. R. Civ. P. 12(b)(6), when considering a motion for judgment on the pleadings under Rule 12(c), the Court accepts all factual allegations in the complaint as true and construes them in the non-movants favor. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The same standard is applied to a motion to dismiss for lack of standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

Short has an easement over the state section which allows for the placement of electrical distribution lines from the state section/Arthun border to Short's property. (*Id.* at ¶ 14.) The Arthun property is also encumbered by several easements in favor of Short's property and PEC, described below. (*Id.* at ¶15.)

In 1956, Arthun's predecessor in interest granted an easement across the Arthun property to PEC ("1956 Easement"). (*Id.* at ¶ 16.) The 1956 Easement gave PEC "the right to enter upon [lands including the Arthun Property] . . . and to place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said lands an electric transmission or distribution line or system . . . ." (*Id.* at ¶ 18.)

In 1989, Arthun also granted an easement over the north end of the Arthun property to Short's predecessor "for purposes ordinarily and reasonably associated with the ownership and use of the servient lands including . . . the installation of utility lines and cables . . . ." (*Id.* at ¶¶ 20, 21.) The easement runs north from the termination of the "Anderson Road" for a distance of approximately 175 feet to connect with the Short's easement on the state section. (*Id.* at ¶ 23.)

Then, in 2008, Arthun granted an additional easement across the Arthun property to Short's predecessor. (*Id.* at ¶ 24.) The 2008 Easement was "granted for purposes ordinarily and reasonably associated with the ownership and use of the dominant lands including . . . the existence of a residence which may be built

upon the dominant lands . . . [and] the installation of utility lines and cables . . . ."
(*Id.* at ¶ 26.)  The boundaries of the 2008 Easement are identical to the boundaries
of the 1989 Easement.  (*Id.* at ¶ 27.)

There is an existing electrical distribution line on Arthun's property that runs
north along PEC's easement for approximately three miles, which provides
electrical service to the Arthun Ranch.  (*Id.* at ¶ 11.)  The line terminates at the
Arthun Ranch buildings, approximately 700 feet south of the state section.  (*Id.* at
¶¶ 12.)  The distance between the termination of the existing distribution line and
Short's easement at the end of Anderson Road is unquantified, but relatively close.
(*See* Doc. 1-1.)

Seeking to establish electrical service to their property, Short informed
Arthun of their intention to connect the existing distribution line to the state section
easement.  (*Id.* at ¶ 28.)  Arthun declined access to the existing line.  (*Id.* at ¶ 29.)
Thereafter, Short submitted a written service request to PEC in December 2017 to
establish electrical service from the existing distribution line.  (*Id.* at ¶ 30.)  But
PEC represented to Short that PEC does not have an easement to cross Arthun's
property for that purpose, and advised Short that the only feasible option was to
establish another underground line along the Anderson Road to connect with
Short's 1989 and 2008 easements.  (*Id.* at ¶¶ 32, 78, 79.)  The proposed line would
roughly parallel the Arthun's existing distribution line.  (*Id.* at ¶ 33.)

PEC estimated the cost of the new distribution line would be $83,000, while connecting from Arthun's existing line to the same end point would only cost $3,750. (*Id.* at ¶ 38; *see* Doc. 1-1.) Short also alleges they have expended approximately $100,000 to supply temporary power to their property for the past three years pending the resolution of its request. (*Id.* at ¶ 39.)

When electrical access via the existing distribution line was ultimately denied, this action ensued.

## II. Legal Standards

### A. Fed. R. Civ. P. 12(b)(6) and (c)

A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, the same legal standard "applies to motions brought under either rule." *Id*.

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677–678 (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 2014 WL 4290615, *10 (9th Cir. 2014).

## B.     Fed. R. Civ. P. 12(b)(1)

A Rule 12(b)(1) motion to dismiss is the proper vehicle to challenge standing because it relates to a federal court's subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In considering such a motion, a court must accept all material allegations in the complaint as true and construe the complaint in the nonmovant's favor. *Id.* (citing *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)). "General factual allegations of injury resulting from the defendant's conduct may suffice, as we 'presum[e] that general allegations embrace those specific facts that are

necessary to support the claim.'" *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907

(9th Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

## II.    DISCUSSION

### A.    Motions to Dismiss Counts 2 & 3 - Standing.

In Count 2 of the Complaint, Short seeks a declaratory judgment under Fed.

R. Civ. P. 57 and 28 U.S.C. § 2201 that PEC has a right to access the Arthun

property to install utility lines from the existing distribution line to the border of

the state section for the purpose of providing Short with electrical service.  (Doc. 1

at ¶ 48.)  In Count 3, Short alleges that PEC and Arthun have wrongfully prevented

Short from connecting to the existing line, as permitted under the 1956, 1989, and

2008 easements.  Both Defendants move to dismiss Count 2 and the portion of

Count 3 which is based on the 1956 easement.  The Defendants maintain that Short

lacks standing to assert the claim because Short is not a party to or intended

beneficiary of the agreement.  (Doc. 7 at 2-3; Doc. 12 at 5-6.)

Short concedes that they are not a direct party to the 1956 Easement, but

argue that their ownership of property within PEC's exclusive service area entitles

them to a judgment determining whether they have the right to access electrical

services via the existing distribution line. (Doc. 19 at 18.)

In an action for declaratory judgment, an actual case or controversy must

exist so that "the judgment does not become an unconstitutional advisory opinion."

*Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). This requirement stems from Article III of the U.S. Constitution, which limits judicial power to resolving actual cases and controversies. U.S. CONST. art. III, § 2, cl. 1. Standing determines whether the plaintiff is the proper party to bring the matter to the court for adjudication. *Chandler*, 598 F.3d at 1122. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, the party asserting federal subject matter jurisdiction has the burden of proof. *Chandler*, 598 F.3d at 1121-22.

The U.S. Supreme Court has determined the "irreducible constitutional minimum of standing" consists of three elements: injury-in-fact, causal connection, and redressability. *Chandler*, 598 F.3d at 1122 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Each element will be discussed in turn.

### 1. Injury-in-Fact

The first element, injury-in-fact, requires a showing of an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Chandler*, 598 F.3d at 1122 (quoting *Lujan*, 504 U.S. at 560). To establish a legally protected interest here, Short

8

invokes obligations created under Mont. Code Ann. Title 69, Chapter 3 relating to the regulation of public utilities in the state of Montana.  Specifically, Short relies heavily on Mont. Code Ann. § 69-3-201, which reads:

> Every public utility is required to furnish reasonably adequate service and facilities.  The charge made by any public utility for any heat, light, power, water, or regulated telecommunications service produced, transmitted, delivered, or furnished or for any service to be rendered as or in connection with any public utility shall be reasonable and just, and every unjust and unreasonable charge is prohibited and declared unlawful.

Mont. Code Ann. § 69-3-201.  Short argues that § 69-3-201 creates a duty in PEC to furnish reasonably adequate electrical service to Short in exchange for a reasonable and just charge, and argues PEC has violated that duty by requiring Short to pay for three miles of new, redundant line as a condition of obtaining electrical service.  (Doc. 19 at 10-11.)

Upon closer analysis, however, it appears that § 69-3-201 may not apply here.  Title 69, Chapter 3 of the Montana Code pertains to the regulation of public utilities by the Montana Public Service Commission.  It provides for the "full power of supervision, regulation, and control of public utilities, subject to the provisions of [Chapter 3]."  The chapter further provides for statutory guidance for the Public Service Commission, and imposes certain requirements for public utilities within the chapter.

As Short acknowledges, however, PEC is a rural electrical cooperative. (Doc. 19 at 14.) As such, it is governed by the provisions of Mont. Code Ann. Title 35, Chapter 18, pertaining to "Rural Cooperative Utilities." That chapter makes clear that "[c]ooperatives . . . transacting business in this state pursuant to this chapter are exempt in all respects from the jurisdiction and control of the public service commission." Mont. Code Ann. § 35-18-104. Therefore, PEC is exempt from regulation of the public service commission, and does not appear to be within the purview of Title 69, Chapter 3, including § 69-3-201.

Even if this section does not apply to PEC, however, the Montana Supreme Court has also recognized that electric cooperatives must conduct themselves in a reasonable manner in dealing with their members and prospective members. In *Howe v. Big Horn Elec. Co-op., Inc.*, 670 P.2d 936, 938 (Mont. 1983), for example, an electrical cooperative required residential customers to pay any outstanding balance of the previous occupant's account before it would supply electricity. The plaintiff brought suit, alleging that the requirement "amounted to extortion and an unfair trade practice in violation of Sections 30-14-103 and 45-6-317, MCA." *Id.* at 937.

On appeal, the Montana Supreme Court acknowledged that the relationship between the co-op and each member is contractual in nature, and members are bound by their contractual agreements. But the Court also found that cooperatives

"hold a favored position in the law," and "cooperative members are often in a disadvantageous position with respect to the cooperative, as they are in rural areas which are less likely to be served by a public utility and must rely on the cooperative for power." *Id.* at 938. The Court found "[t]his disparity between the relative positions gives rise to an obligation on the part of the Cooperative to deal in a reasonable manner with its members." *Id.*

The Montana Supreme Court later reaffirmed this obligation when dealing with a prospective member. In *Granbois v. Big Horn Cty. Elec. Co-op., Inc.*, 986 P.2d 1097, 1102 (Mont. 1999), the Court again considered a cooperative's requirement that a utility customer pay any outstanding charges on the previous customer's account before a membership could be transferred. Relying on *Howe*, the Court found that "a disparity in the relative positions of the consumer and the cooperative necessarily requires the cooperative to deal with its members reasonably." *Id.* In light of this duty, the Court found "requiring potential customers to pay a previous member's delinquent bill in full is an unreasonable restriction of the electric consumer's access to electric service." *Id.* Accordingly, the Court ordered that partial summary judgment be entered in favor of the plaintiff.

Therefore, even in absence of § 69-3-201's applicability, the Montana Supreme Court has recognized an electrical cooperative's obligation to deal with

its members and potential members in a reasonable manner.  The fact that the

Montana Supreme Court ordered partial summary judgment in *Granbois* based on

that obligation - and the potential member's corresponding right - demonstrates

that it is legally enforceable.  While the contours of this right have not been well

defined, it provides a sufficient basis to state a plausible claim here.

Short also sufficiently alleges an injury based on this duty.  Short alleges

that PEC owns the existing line; the line is located on a right-of-way in favor of

PEC granted under the 1956 Easement; new electrical service was sought through

contact with Arthun and a written request to PEC; access and service was

unreasonably denied; an alternative new line was proposed at an unreasonable cost

($83,000) compared to using the existing line ($3,750); and such denial also

resulted in additional costs of approximately $100,000 to provide temporary power

and loss of enjoyment of Short's property for more than three years.  (Doc. 1 at ¶¶

11-13, 16, 18, 20-35, 37-39, 46-47; *see also* Doc. 1-1.)  These allegations

sufficiently state an injury-in-fact.

## 2.    Causation

Under the second standing requirement, a causal connection must exist

between the injury and the defendant's conduct.  That is, the injury must be "fairly

traceable to the challenged action of the defendant."  *Chandler*, 598 F.3d at 1122;

*Lujan*, 504 U.S. at 560; *Lexmark*, 572 U.S. at 125.  Short alleges that access to the

existing line was wrongfully denied, and that the denial caused monetary damages and loss of full use and enjoyment of their property. (Doc. 1 at ¶¶ 29-39, 46-47, 54-57.) Thus, but for the Defendants' denial of access and new electrical service, Short would not have suffered the costs of temporary electrical service and loss of full use and enjoyment of their property.

These factual allegations, presumed to be true for purposes of the current motions, satisfy that denial of access to and service from existing distribution lines caused Short's injury.

### 3. Redressability

Short also satisfies the third element of redressability by asserting plausible allegations that the injury may be redressed through this litigation. To show redressability, it must be shown that the "*injury* that a plaintiff alleges is likely to be redressed through the litigation. . . ." *Sprint Communications Co, L.P. v. APCC Services, Inc.*, 554 U.S. 269, 287 (2008) (emphasis in original). A plaintiff's burden to establish redressability is "relatively modest." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018). "[A] plaintiff need only show a substantial likelihood that the relief sought would redress the injury." *Id.* (internal citations and quotations omitted.)

Here, the relief sought would redress the injury alleged by Short. Short seeks a declaration that PEC has the right to install utility lines from the existing

distribution line on Arthun's property to the state section for the purpose of connecting Short to the existing line, and an order compelling PEC to establish electrical service at a reasonable cost. Thus, the injury alleged by Short – lack of electrical service and the inability to establish service at a reasonable cost – would be redressed by a favorable outcome.

Thus, Short has sufficiently alleged all three requirements for constitutional standing.

### 4.    Prudential Standing

Arthun Ranch also argues, however, that Short's claim is not within the bounds of "prudential standing." (Doc. 21 at 4-5.) Whereas Article III standing poses minimum requirements for constitutional standing, prudential standing is a judicially created doctrine that sets "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, (2004), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). One such limitation is the prohibition against third-party standing. That is, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of interests of third parties." *Warth*, 422 U.S. at 499. The Ninth Circuit has recognized that "[t]his rule ensures that 'plaintiffs possess such a

14

personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional [or statutory] questions.'" *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1119 (9th Cir. 2015) (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004)).

Arthun argues that Short is seeking to invoke PEC's rights under the 1956 easement, contrary to this prudential standing principle. But Short is not seeking to enforce PEC's right, or remedy PEC's injury, it is litigating its own stake in this controversy. While Short is not a party to the 1956 Easement, they are basing their claim on their status as a property owner within PEC's exclusive service area, and their claim that PEC has an obligation to deal with them in a reasonable manner. They have alleged that PEC has violated this obligation by refusing to provide reasonably priced electrical services to them by means readily available to PEC. Thus, Short is not attempting to invoke PEC's right; it is seeking to enforce PEC's obligation to deal with them in a reasonable manner, and its own claimed right to obtain electrical service at a reasonable charge.

Short's position finds some support in *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008). In *Newcal*, Ikon had threatened to sue Newcal for interfering with its business relationships with third-parties. *Id*. at

1056.  Newcal subsequently sought a declaration that Ikon's contracts with the third-parties were void and unenforceable, thus allowing it to pursue competing contracts without the risk of potential claims of tortious interference with Ikon's business relationships.  *Id.*  The district court dismissed the claim on the basis that Newcal lacked standing to request a declaration of third parties' contractual rights.  But the Ninth Circuit reversed, finding Ikon's threat of litigation was sufficient to give Newcal a stake in the controversy, even though it was not a party to the relevant contracts.  *Id.*

Similarly, in *Ray Charles Foundation,* the Foundation received royalties under a copyright granted to a third-party during Ray Charles' lifetime.  *Ray Charles Foundation*, 795 F.3d at 1112.  After Charles' death, several of his heirs attempted to terminate the copyright grants, which were then held by Warner/Chappell Music.  The Foundation brought suit to challenge the terminations.  The district court dismissed the case for lack of standing, reasoning that the Foundation was "only asserting Warner/Chappell's interests in the termination notices," not its own.  *Id.* at 1115.

The Ninth Circuit reversed on appeal, and found that the Foundation was plainly asserting its own legal rights and interests, not Warner/Chappell's.  Thus, the issue of third-party standing was immaterial.  The Court reasoned that while Warner/Chappell owned the copyrights, the termination of the copyrights also

directly affected the Foundation's receipt of royalties.  Thus, while the termination would affect Warner/Chappell's ownership of the copyrights, it would also deprive the foundation of the right to receive future royalties.  Under those circumstances, the Ninth Circuit had "little difficulty concluding the Foundation is litigating its own stake in this controversy."  *Id.* at 1119.

While *Newcal* and *Ray Charles Foundation* are not necessarily factually analogous to this case, both cases illustrate that standing can be established in some circumstances where a party is asserting their own stake in a third-party agreement.  Short is similarly litigating their own stake in the controversy here.  Since they are asserting their own rights and interests, third-party standing is not an issue.

Therefore, the Defendants' motions to dismiss Count 2, and that portion of Count 3 relative to the 1956 easement, will be denied.

### B.       Motion to Dismiss Count 4 – Claim for Injunctive Relief

Count 4 of Short's complaint is captioned as a claim "for injunctive relief." (Doc. 1 at ¶ 12.)  Short alleges that PEC has a duty under Mont. Code Ann. § 69-3-201 to furnish electrical service and facilities to Short and to avoid unjust or unreasonable charges.  (*Id.* at ¶¶ 56-57.)  Alternatively, Short alleges PEC may acquire any interest in Arthun's property necessary to provide electrical service to Short by eminent domain.  (*Id.* at ¶ 58.)  Short then alleges that it is "unreasonable,

unfair, and unlawful" to require Short to pay for the construction of a different distribution line. (*Id.* at ¶ 59.)

Arthun moves to dismiss Count 4 on the basis that monetary damages are sufficient to remedy any injury Short may sustain, and therefore injunctive relief is not appropriate. (Doc. 7 at 3.) Short responds by clarifying that they are not seeking any form of injunctive relief as to Arthun. (Doc. 19 at 21-22.) Therefore, to the extent Count 4 can be construed as stating a claim against Arthun for injunctive relief, the claim will be dismissed.

PEC does not directly address Short's claim for injunctive relief, but it does contest the foundation of the claim. PEC argues that it is not subject to Mont. Code Ann. § 69-3-201, and that eminent domain cannot be used for purposes suggested by Short. (Doc. 12 at 6, 9.)

Short responds that they are not asking the Court to compel PEC to exercise the power of eminent domain, but asking the Court to recognize that PEC *could* exercise eminent domain powers and that it is unreasonable and wrong for PEC to withhold electric service unless Short pays for a new underground line. (Doc. 19 at 19.)

Without addressing the merits of PEC and Short's specific arguments, the Court finds that Count 4 of the Complaint fails to state a cognizable claim for injunctive relief. "An injunction is an order requiring a person to refrain from a

18

particular act." Mont. Code Ann. § 27-19-101. It can be granted in limited circumstances, including when "pecuniary compensation would not afford adequate relief," or "it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief." Mont. Code Ann. § 27-19-102(1) & (2).

Upon reviewing Short's claim in Count 4, it is unclear what act or action Short is seeking to enjoin. In their response brief, Short appears to distance the claim from one for injunctive relief. (Doc. 19 at 21-24.) Short argues that the parties are confusing their claim for declaratory relief with a claim for an injunction. (*Id.* at 22.) Short states they are "simply requesting that the Court determine that Short has the right, by virtue of the 2008 Easement, the 1956 Easement, or PEC's eminent domain power, to connect to the existing electrical line." (*Id.* at 23.) Indeed, that does not sound like a claim for injunctive relief. But if Short is seeking declaratory relief, as they indicate, it is not evident from the allegations in Count 4. It is also unclear how such a claim for declaratory relief would differ from the declaratory judgment sought in Counts 1 and 2.

In any event, PEC's motion for judgment on the pleadings will be granted as to Count 4 of the Complaint. As currently pled, the allegations of Count 4 fail to allege a cognizable legal theory. But the dismissal will be without prejudice, and

Short will be given the opportunity to clarify the basis of their claim and attempt to state a plausible claim for relief, if they chose to do so.

### C. Counts 5 & 6 – Unjust Enrichment

Arthun and PEC both move to dismiss Short's unjust enrichment claims in Counts 5 and 6 of Complaint on grounds that the claims are not ripe. (Docs. 7 at 9; 12 at 10.) Federal courts must dismiss a complaint for lack of subject matter jurisdiction if a claim is not ripe. *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997). Ripeness depends on the fitness of the issues for judicial consideration and "the hardship to the parties of withholding court consideration." *Id.* (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)); *Chandler*, 598 F.3d at 1122. The "central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (alteration original) (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532 (2d ed. 1984)); *Chandler*, 598 F. 3d at 1122-23.

To establish a claim for unjust enrichment under Montana law, a plaintiff must establish (1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the benefit; and (3) the other's acceptance or retention of the benefit under circumstances that would render it inequitable for the

20

other to retain the benefit without compensating the first party for the value of the benefit. *Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018), *reh'g denied* (Sept. 5, 2018); *N. Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont. 2013).

With respect to Short's unjust enrichment claim against Arthun in Count 6, no benefit has been conferred upon Arthun, and Arthun Ranch has not accepted nor retained such benefit. Short's unjust enrichment claim is thus unripe. The claim is contingent upon Short constructing a new line, and then Arthun Ranch actually seeking to connect to it.

Short's additional argument that Arthun Ranch will benefit by way of increased agricultural productivity when the existing overhead line is removed from Arthun's agricultural fields, is similarly uncertain. (Doc. 19 at 25.) It is contingent upon Short constructing a new underground line; Arthun seeking to connect to that underground line; PEC allowing Arthun to connect to that line; the existing line being taken down; and then Arthun Ranch experiencing an increase in agricultural productivity.

The same is true with respect to Short's unjust enrichment claim against PEC in Count 5. Short's Complaint alleges that the new *proposed* replacement distribution line *would* benefit PEC as a replacement by enhancing PEC's ability to maintain its lines *if* Plaintiff's are required to pay for the new line and, without

injunctive relief, PEC *would* be unjustly enriched. (Doc. 1 at ¶¶ 62-68.) Short argues that PEC's demand for the construction of the new, three-mile replacement line means injury is inevitable, but the Court cannot ignore that the allegation is predicated on "*if* PEC's … wrongful behavior is unchecked by this litigation." (Doc. 19 at 26, (citing to *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000)) (emphasis added).)

As discussed in context of Arthun, allegations relating to a perceived benefit conferred on PEC are uncertain and contingent upon future events. No benefit has been conferred, and no benefit has been accepted or retained. At present, the new line is still a proposal and far from certain.

Therefore, because Short's allegations rest on uncertainty and contingent events, Arthun and PEC's motions to dismiss Short's unjust enrichment claims in Counts 5 and 6 will be granted.

### 6.     Count 7 - Consumer Protection Act

PEC moves to dismiss Short's claim under the Montana Consumer Protection Act ("MCPA" or "the Act"). (Doc. 12 at 11.) PEC argues that there has been no consumer transaction between PEC and Short, no money or goods have changed hands, and Short has failed to allege unfair or deceptive practices as identified under Mont. R. Admin. § 23.19.101. (*Id.*) Further, PEC contends that

there are no Montana cases that address the issue of whether Consumer Protection Act applies to the purchase of electricity. (*Id.* at 11-12.)

Short responds that Montana's Consumer Protection Act does not define "consumer transaction" as narrowly as PEC advances because offers for sale, and the distribution of services or any other article, commodity, or thing of value are included within trade or commerce under the Act. (Doc. 19 at 28.) Short asserts that in offering electricity and electrical services for sale PEC is liable for unfair or deceptive practices under the MCPA. (*Id.* at 29.) Short also cites to *Granbois v. Big Horn Cty. Elec. Co-op., Inc.*, 986 P.2d at 1102, for the proposition that electric cooperatives' services fall under the MCPA. (*Id.*)

The MPCA makes unlawful unfair or deceptive acts or practices in the conduct of any trade or commerce and creates a private cause of action for violations. Mont. Code Ann. §§ 30-14-103 and -133; *Plath v. Schonrock*, 64 P.3d 984, 989 (Mont. 2003). Actions brought against electric cooperatives are not exempt from the Consumer Protection Act. *Granbois*, 986 P.2d at 1102; Mont. Code Ann. § 30-14-105(1). Further, while Mont. Admin. R. § 23.19.101 does not specifically include the representations at issue here, the rule makes clear that it lists "only some of the acts or practices considered unlawful under 30-14-103, MCA, and is not intended to be exhaustive of all possible violations thereunder."

Short alleges that PEC improperly "leveraged its superior bargaining position and exclusive service area, made deceptive statements to Short regarding PEC's obligations and Short's rights with regard to electrical service, and unfairly attempted to coerce Short into paying for improvements to PEC's systems." (*Id.* at 28-29 (citing Doc. 1 at ¶¶ 75-90).) Short also alleged that it suffered $100,000 in temporary power costs and loss of use and full enjoyment of their property when it was denied access to the existing distribution line. (Doc. 1 at ¶¶ 39-40.) These allegations plausibly state the type of unlawful act or practice that the Act contemplates, as described in Mont. Admin. R. § 23.19.101:

> (1) A person engages in unfair or deceptive and therefore unlawful acts or practices when, in the conduct of any trade or commerce, [the person]: (*l*) states that a transaction involves rights, remedies or obligations that it does not involve …

Mont. Admin. R. § 23.19.101(1)(*l*). Short's allegations that PEC wrongfully denied access to the existing distribution line for hook-up, wrongfully denied that the 1956 Easement allows PEC to access the Arthun Ranch for that purpose, and represented that electrical access would require a costly alternative, plausibly allege statements that "a transaction involves rights, remedies or obligations that it does not involve." (Doc. 1 at ¶¶ 46-47.) Taken in concert with the above allegations that PEC has made deceptive statements regarding PEC's obligations and Short's rights, Short has sufficiently stated a plausible claim under the MCPA.

Therefore, Short has met the pleading standard and the motion to dismiss as it pertains to the MCPA must be denied.

### C.    Unaddressed Claims

Although PEC's motion appears to pertain to all Short's claims, PEC does not address Count 1 or the portion of Count 3 which relates to the 1989 and 2008 easements. Short's Complaint alleges sufficient factual allegations to support these claims. Short alleges that the 1989 and 2008 Easements were granted in favor of their property and provide access to the Arthun Ranch to install utility lines, and that Arthun denied access and PEC denied electrical service, causing injury in the sum of $100,000 for temporary power and full use and enjoyment of their property. (Doc. 1 at ¶¶ 20-31, 39.) These factual allegations, taken as true, sufficiently state a claim and which may be redressed by a declaration of rights under the 1989 and 2008 Easements (Count 1), and support a claim for interference with easement rights (Count 2).

Therefore, PEC's motion as to Count 1 and Count 3 is denied.

## IV.    CONCLUSION

Based on the foregoing findings, **IT IS ORDERED** that:

1.    Arthun Ranch's Motion to Dismiss (Doc. 6) is **GRANTED**, without prejudice, with respect to Counts 4 and 6 of the Complaint, and **DENIED** in all other respects.

2. PEC's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**, without prejudice, as to Counts 4 and 5 of the Complaint, and **DENIED** in all other respects.

**IT IS ORDERED**.

DATED this 16th day of March, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge